1

2

3

4                                                        HON. RONALD B. LEIGHTON

5

6

7

8

9

10              UNITED STATES DISTRICT COURT

11          WESTERN DISTRICT OF WASHINGTON AT TACOMA

12

ELIZABETH AITKEN, et. al.                Case No.: 3:19-cv-05322-RBL
13                Plaintiffs,

14   vs.

DEFENDANT'S OPPOSITION
15                                           PLAINTIFFS' MOTION FOR TEMPORARY
CITY OF ABERDEEN,                         RESTRAINING ORDER
16
                 Defendant
17

18        Comes now City of Aberdeen ("City"), by and through its counsel M. Patrice Kent, to

19   respectfully submit this Opposition to Plaintiffs' Motion for a Temporary Restraining Order

20   ("TRO Order").  This opposition is timely filed pursuant to LCR 65(b)(5)(2); Defendant received

21   service shortly after 3:30 pm on Monday April 29, 2019.

22                              **1.  INTRODUCTION**

23        Plaintiffs describe a parade of horribles using hyperbole and worst case scenarios that

24   have not and likely will not occur, claiming they will *necessarily* arise out of the City's

25

26   reasonable and considered decision to close a single piece of property, upon which a number of

27   OPPOSITION PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 1                           Corporation Counsel, City of Aberdeen
28   CASE # 3:19-CV-05322-RBL                        200 E. Market St.
                                                     Aberdeen, WA 98520
                                                     Tel: (360)537-3231

individuals had been granted a license to remain for a limited period of time.  Plaintiffs discount the City's life safety, public safety and public welfare concerns stating instead that the City's elected officials are crying "crocodile tears." (*Docket No. 11*, p.2, line 10) Plaintiffs assert, based on a few unattributed comments (*Docket No. 17*. para 7-12) and one specific public official who expressed concern about the extent of the unsheltered population – nationwide and statewide – and where those individuals will end up (*Docket No. 19*, para. 3), that there is a concerted effort to remove and restrict not only unsheltered individuals from being in Aberdeen, but "poor people" in general. (*Docket No. 11*, pp 14-23)

They further point to legislative language in the City's Public Camping Ordinance that no longer blames campers for "creating" a harm, and instead identifies that the *conduct* of camping contributes to public welfare issues.  (*Id.*, pp 6-7). From that attempt to differentiate between the people and the acts, Plaintiffs choose to interpolate a conspiracy in which not only is the City callous, but that it is intentionally removing and/or effectively banishing (*Id.,* pp 18-21), an entire subset of our community through exercise of its police powers.

 Plaintiffs utterly discount the life safety, public safety and public welfare concerns at the River Street property.  They claim that they have not personally felt endangered due to the proximity of the rail tracks – because the trains "move very slowly". (*Docket No. 17,* para 15).

Plaintiffs also admit to driving across the tracks, but insist they are careful and had "never heard" of damage to railroad equipment (*Id.,* para 20)  The railroad does not report damage to its tracks and other equipment to member of the general public, they report to police, fire and emergency planners and professional engineers who are able to assist in the control of such

Corporation Counsel, City of Aberdeen
200 E. Market St.
Aberdeen, WA 98520
Tel: (360)537-3231

damages and who are first responders in the event of a catastrophic event. (*Hubbard Declaration*, para 3, 17, 18; *Shumate Decl.*, para 27, 29)

The fact that Plaintiffs claim to have never heard of such incidences does not make them disappear, but it does speak highly of the effective response that protects our entire community.

Treatment by the Plaintiffs of the most tragic incident that the City points to when illustrating the dangers of the River Street property is utterly inconsistent with their narrative of a close, caring, family environment.  As the Court is aware, in May of 2018 a woman was crossing the tracks and became caught under one of those slow-moving trains that "are very easy to avoid being hit [by]". (*Docket No. 11*, p 22, line 16)  Rather than acknowledging the life-threatening and life changing tragedy that resulted in her losing both of her legs, Plaintiffs dismiss the incident as an "injury" to a woman who was "delusional" (*Docket No. 17*. para 13 – 14).  The information provided in this filing does not appear to have been reported to the police or medical investigators for follow-up, (*Hubbard Decl.*, para 27) and the Plaintiff declarant does not seem overly troubled by the outcome.  One of the Plaintiffs, Shawna Baker, was reported in the Daily World as saying that she was the first on the scene; the newspaper report did not include any mention of the woman's mental health and clearly described the near tragedy of the incident (http://www.thedailyworld.com/news/womans-legs-severed-by-train-in-accident-near-aberdeen-homeless-camp/ (*last visited April 30, 2019*)).

Plaintiffs do not dispute that the City issued limited permission for persons camping at the site for a limited period (*Docket No. 13*., para 11; *Docket No. 14*, para 8; *Docket No. 15*., para 6) and some Plaintiffs also openly admit that either did not apply for (*Docket No. 12*. para 8), or were denied (*Docket No. 16*., para 6) permission to reside on the property.  None of the Plaintiffs

OPPOSITION PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 3
CASE # 3:19-CV-05322-RBL

Corporation Counsel, City of Aberdeen
200 E. Market St.
Aberdeen, WA 98520
Tel: (360)537-3231

indicate any concern or threat of enforcement of the permit conditions that they would be removed prior to May 1, 2019, whether they actually had the City's permission to be on the property or not. It is clear from the pleading that the campers at the River Camp are not asserting a fear or threat of enforcement of public camping laws, but are instead insisting on the City providing a specific alternative shelter location.

Plaintiffs have not expressly disputed that the City did not have the authority to condition anyone's ability to stay on the land once the City purchased the property.  Nor have they made any reasonable evidence-based assertions that there are not serious life safety, public safety, or public welfare issues at the River Street property.

On its simplest terms, both Plaintiffs' Complaint, and the instant Motion for Temporary Restraining Order, demand the City take no future action at the River Street property or on its existing Public Camping code or on its Obstruction of Streets and Sidewalks code sections until and unless the City identify alternative shelter for all licensee/campers – and although it is not clear, Plaintiffs may be demanding that for the entire unsheltered population of the City.

This demand, although framed as predicated on *Martin v. Boise* (902 F.3d 1031 (9th Cir. 2018), *amended and superceding opinion on denial of rehearing,* ___ F3d. ___ (April 18, 2019)) goes far beyond the narrow construction of the case and flies into the dissent's seemingly over-reaching extreme of not being able to enforce basic life safety and public safety considerations. (see e.g., ("J Smith stated that the panel's reasoning will soon prevent local governments from enforcing a host of other public health and safety laws." (*Id.*, at 10).

## 2.  *MARTIN V. BOISE* IS NARROWLY DRAFTED

Corporation Counsel, City of Aberdeen
200 E. Market St.
Aberdeen, WA 98520
Tel: (360)537-3231

The *Martin* court determined that "as long as there is no option of sleeping indoors, the government **cannot criminalize** indigent, homeless people for sleeping outdoors, on public property." (*Id.,*at 8 [iemphasis added])  Boise's ordinances had not taken into account reasons other than shelter capacity for determination of whether there was "available shelter" such as stay limits or religious requirements. In the *en banc* denial, Justice Berzon outlined limitations of the decision such as "that municipal ordinances that **criminalize sleeping, sitting, or lying in *all* public spaces, when *no* alternative sleeping space is available violate the Eighth Amendment**" and "**Nothing in the opinion reached beyond criminalizing** the biologically essential need to sleep when there is no available shelter" (*Id.,* at 8 [emphasis added]) and "The opinion clearly states that it is not outlawing ordinances 'barring the obstruction of public rights of way …[and] in no way dictate[s] to the City that it must provide sufficient shelter for the homeless, or allow anyone who wishes to sit,lie, or sleep on the streets **… at any time and at any place.**' " (*Id.,* at 9 [emphasis added]*)*

Plaintiffs, however, assert that the City's *potential and incomplete* finding of sufficient life safety, public safety and public welfare concerns – for which they offer no rebuttal other than personal opinions of individuals with no known environmental, scientific, traffic, or engineering risk assessment training – are indefensible and in violation of the overtly narrow decision in *Martin.* Plaintiffs would expand *Martin* to require the City to either impose no restrictions on public camping whatsoever – no matter the location or risk to safety of all participants, or to require the City to provide shelter beds for every single unsheltered individual in Aberdeen. In addition, at least two of the Plaintiffs are adamant that the *only* shelter they will accept is one where they may live together (*Docket No. 14.*, para 13); so now Plaintiffs require not only *some*

OPPOSITION PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 5
CASE # 3:19-CV-05322-RBL

Corporation Counsel, City of Aberdeen
200 E. Market St.
Aberdeen, WA 98520
Tel: (360)537-3231

shelter, but require *specific* shelter.  With unlimited resources, and no objection from any other City resident such an outcome would possible; however, that is not the case.  Plaintiffs must not be allowed to so broaden *Martin* decision or we would indeed face the outcome threatened by the dissent.

### 3. IMPUTED INTENT OF CITY COUNCIL TO REMOVE OR "BANISH"

Plaintiffs cannot countenance that the entire 12-member City Council has other than nefarious intent when that body amended its municipal code sections related to public camping. Instead, they rely on a single person who cannot even name two of the three Council members she claims expressed opinions (*Docket No.* 17, para 8 naming "Tawny Lewis and Karen Rowe" as council members; there is no Lewis on City Council, but there is a Tawni Andrews (see e.g., https://aberdeenwa.gov/government/city-council-members-2/ (last visited 05/01/219)). Plaintiffs offer no proof that the opinions allegedly offered by three individuals on a twelve-member City Council were an accurate reflection of any intent other than public welfare and safety concerns to manage public properties on which public camping may be allowed when there is no alternative shelter bed available.  Since the City recognizes the dearth of available shelter for all of the unsheltered individuals, under our current law there has been no enforcement of public camping. (*Larson Decl.,* para 6,11).

Plaintiffs seem intent on obfuscating the meaning of plain language and common sense interpretation of that language.  AMC 12.46.040(A) identifies "portions of any street **right of way** that is not expressly reserved …" (emphasis added), and Plaintiffs simply read over the "right of way" or choose to misunderstand that the right of way is more broad that simply the area "expressly reserved for vehicular or pedestrian travel". (see e.g., *Larson Decl.* para 12)

OPPOSITION PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 6
CASE # 3:19-CV-05322-RBL

Corporation Counsel, City of Aberdeen
200 E. Market St.
Aberdeen, WA 98520
Tel: (360)537-3231

Plaintiffs have not produced a single instance of enforcement of public camping ordinance, or frankly of open violations of the City's permission for a limited number of individuals to shelter on the River Street property (see e.g., *Docket No. 12.* para 8; and *Docket No. 16.*, para 6).

Plaintiffs assertion that, as applied, the combination of enforcement of a valid public camping ordinance and a valid street and sidewalk obstruction ordinance and a prospective ordinance that *may* close an unsafe piece of City-owned property necessarily results in unconstitutional (under both state and federal law) deprivation or infringement of rights of a variety of classes of people.

In order to reach this extreme and unreasonable outcome, Plaintiffs require findings on three separate ordinances – one of which does not even currently exist – and to impute intent as to their purpose beyond the statements on their face.

Plaintiffs claims of banishment are, at best, grossly overstated and rely on their own interpretation of presumably valid existing municipal law, and assumptions of future outcomes for a proposed one.

Banishment is, according to Black's Law dictionary, "a punishment **inflicted on criminals, by compelling them** to quit a city, place or country for a specified period of time, or for life." (emphasis added).  As is clearly outlined above, the City is not inflicting a punishment or compelling any individuals to leave the City – there remain opportunities for places to set up shelters in Aberdeen.

//

//

OPPOSITION PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 7
CASE # 3:19-CV-05322-RBL

Corporation Counsel, City of Aberdeen
200 E. Market St.
Aberdeen, WA 98520
Tel: (360)537-3231

4.  **TEMPORARY RESTRAINING ORDER**

Courts in the Ninth Circuit apply the same analysis for deciding on the application for a Temporary Restraining Order as is used with a Preliminary Injunction.  *McCarthy v. Servis One, Inc., 2017* U.S. Dist. LEXIS 32622, at *9-10 (N.D. Cal. Mar. 7, 2017). Here, Plaintiffs must meet one of two variants of the four-prong test: (a) likelihood of success on the merits; (b) a showing of irreparable harm in the absence of injunctive relief; (c) balance of equities tips in the movant's favor; and (d) injunction is in the public interest. *Stormans Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

The 9th Circuit applies a sliding standard of the test if there are serious questions going to the merits, that is a less-than likely success on the merits.  Serious questions are those that cannot be resolved at the hearing on the injunction, and as to which the Court perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo. *EEOC v. Evans Fruit Co*., 2010 U.S. Dist. LEXIS 146991, at *21-22 (E.D. Wash. Oct 26, 2010).  The sliding test is considered if the balance of hardships tips sharply in the movant's favor and the other two prongs are satisfied. *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011).

i)  **Plaintiffs are not likely to succeed on the merits of their case**

Plaintiffs do not subject their argument to a forum analysis.

Plaintiffs provide a compelling narrative of impingement of First Amendment rights as they may attach to public forum.  Plaintiffs' arguments do not, however, support their preferred conclusion in a non-public forum such as the River Street property, and Plaintffs themselves note that the property fails as being considered anything other than a nonpublic forum "The First

OPPOSITION PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 8
CASE # 3:19-CV-05322-RBL

Corporation Counsel, City of Aberdeen
200 E. Market St.
Aberdeen, WA 98520
Tel: (360)537-3231

Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Serv. v. Council of Greenburgh Civic Assn's.*, 453 U.S. 114 (1981).

Plaintiffs may then purport that, by granting conditional permission for a limited number of individuals to use the land for temporary shelter the City has created a limited public forum. It is antithetical that the Court could punish the City for taking in support of shelter, to then describe the site as a limited public forum when the City clearly and repeatedly has noted the compelling life-safety and public health concerns of the property.

The City has established that it has imposed reasonable content-neutral time, place, and manner restrictions for the compelling governmental interest of protecting life-safety, public welfare, and environmental health and it has done so using the least restrictive means. Plaintiffs submit that the area should be fenced in – (*Docket 17,* para 19) which only further isolates that group of people.

Plaintiffs cannot show they are likely to succeed on the merits of their case.

**ii)  Showing of Irreparable Harm Absent Injunctive Relief**

None of the Plaintiffs have shown irreparable harm. "mere assertion of [constitutional] rights does not automatically require a finding of irreparable injury. It is the purposeful [act that] constitutes irreparable harm for preliminary injunction purposes." *CTIA-The Wireless Ass'n v. City of Berkeley, California*, 854 F.3d 1105, 1123 (9th Cir. 2017).

Plaintiffs have shown they are unwilling to act reasonably with respect to the City's attempts.

**iii) Injunction is Not in the Public Interest**

OPPOSITION PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 9
CASE # 3:19-CV-05322-RBL

Corporation Counsel, City of Aberdeen
200 E. Market St.
Aberdeen, WA 98520
Tel: (360)537-3231

The effect of employing the extraordinary remedy of a TRO creates a near impossible burden on the City in its efforts to protect human health and welfare at the property and on its streets.

To obtain the relief requested, Plaintiffs must "establish[] that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harms in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7, 20, 2008 (internal cites omitted).  In this case, Plaintiffs simply have not met their burden.


REMEDY REQUESTED

Defendants herein respectfully move the Court to Deny the Motion for TRO, and other remedy as may be equitable and just.


Respectfully submitted this 1st day of May, 2019.

*/s/ Mary Patrice Kent*

Mary Patrice Kent, WSBA # 42460
200 E. Market Street, Aberdeen, WA 98520
pkent@aberdeenwa.gov
Tel: (360) 537-3231
Fax: (360)531-9137

OPPOSITION PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 10
CASE # 3:19-CV-05322-RBL

Corporation Counsel, City of Aberdeen
200 E. Market St.
Aberdeen, WA 98520
Tel: (360)537-3231